UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| DALIA MUNOZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:06-CV-215-C |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

Plaintiff Dalia Munoz seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Because Munoz did not consent to the jurisdiction of the United States Magistrate Judge, pursuant to the order reassigning this case, the undersigned now files this report and recommendation, proposed findings of fact and conclusions of law, and proposed judgment.

I. **Procedural history**

Munoz filed an application for SSI on August 5, 2002, alleging she was disabled and had been unable to work since 1995 because she suffered from seizures and arthritis. (Tr. 12, 44, 59.) An Administrative Law Judge (ALJ) held a hearing at which Munoz claimed she became disabled on December 1, 1995, because she had some seizures and

because she had been diagnosed with diabetes mellitus. (Tr. 206.) She also testified that she last worked in 1994 and quit her job at that time because she was pregnant. (Tr. 207.) She further testified that she experienced dizzy spells and faintness she attributed to diabetes mellitus and that she experienced seizures that occurred once every six months. (Tr. 207-09, 212-14.)

The ALJ rendered a decision finding that Munoz was not disabled. (Tr. 12-18.) In reaching his decision, the ALJ determined that Munoz suffered from a back disorder and seizure disorder that were severe impairments. (Tr. 17.) He further found that she was capable of performing work at the light exertional level despite her severe impairments but that she was limited to jobs that would not require repetitive bending or overhead work and that would not involve work at unprotected heights, dangerous machinery, large bodies of water, or open flames and that would allow work in a controlled environment. (Tr. 16.) Based on information in the Medical-Vocational Guidelines ("the Grids"),[1] the ALJ determined that such jobs existed in substantial numbers in the national economy and that Munoz could perform such jobs and was therefore not disabled. (Tr. 16-17.)

Munoz appealed the determination that she was not disabled in the United States District Court arguing that remand should issue because the ALJ had failed to elicit

---

[1] Located in the Commissioner's regulations at appendix 2 of part 404, the Grids consist of rules that direct a finding of disability when the claimant's demographic characteristics and residual functional capacity correspond to the job requirements under a particular rule. *See* 20 C.F.R. pt. 404, subpt. P., app. 2 (2006). The ALJ may not rely exclusively on the Grids to make a non-disability determination when the claimant suffers from non-exertional impairments that would significantly affect his ability to work; in such cases, the ALJ must elicit vocational expert testimony to determine whether there are jobs the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

vocational expert testimony. Thereafter, the Commissioner filed a motion to reverse and remand the case, and the United States District Court granted the motion and reversed and remanded Munoz' case. *See Munoz v. Barnhart*, No. 5:05-CV-011-C (N.D. Tex. May 24, 2005). On remand, the Appeals Council issued an order vacating the Commissioner's decision and remanding Munoz' claim to an ALJ. (Tr. 236.)

Munoz' case was assigned to a different ALJ who held a hearing and issued a decision in which Munoz was again found not disabled. (Tr. 229-33, 281-99.) In reaching the decision, the ALJ determined that Munoz suffered from degenerative disc disease of the lumbar spine but did not suffer from a medically determinable seizure disorder. (Tr. 230.) The ALJ acknowledged that Munoz alleged disability due, in part, to a seizure disorder and noted her testimony that she had taken Dilantin, a medication prescribed to control seizures. (Tr. 230); *see* PHYSICIAN'S DESK REFERENCE 2622-24 (56th ed. 2002). He also noted, however, that the fact that a claimant is prescribed medication "will not substitute the need for a medically determinable impairment" and that several Electroencephalograms (EEGs) had been negative for seizure activity. (Tr. 230.) After discussing the evidence, the ALJ found that Munoz retained the capacity to perform the full range of light work and determined that Rule 202.17 in the Grids directed a finding that she was not disabled. (Tr. 232.) The Appeals Council refused Munoz' request for review, and Munoz filed the appeal now before the court. (Tr. 4-6.)

II. **Munoz' arguments**

Munoz frames the issue before the court as follows:

> Whether the administrative law judge, after remand of this case by this Court to obtain vocational testimony because the plaintiff was found to have a severe non-exertional impairment from a seizure order, defiantly circumvented the law of the case doctrine and its corollary mandate rule incorporated into the regulations by finding that she does not have a medically determinable seizure disorder in the subsequent decision.

*See* Pl.'s Br. at 1. Munoz contends the District Court remanded her case for the purpose of requiring vocational expert testimony because she suffered a non-exertional impairment caused by her seizure disorder and argues the second ALJ erred and acted in defiance of the remand order because he re-evaluated the evidence in the first ALJ's decision in which it was specifically determined that she suffered from a severe seizure disorder. Munoz also argues the Commissioner's motion to remand was an unequivocal admission that she did, in fact, have a severe seizure disorder with attendant non-exertional limitations that necessitated testimony from a vocational expert. She further contends that an admission of fact made by a party in the course of litigation is an intentional waiver of proof for the opposing party and becomes a judicial admission.

Munoz also argues that the doctrines of *res judicata* and collateral estoppel apply to Social Security administrative hearings. In connection with these arguments, she contends the only new evidence entered after the remand order relates to treatment she underwent for osteoarthritis and fibromyalgia. She contends that she was prescribed Dilantin and that the prescription represents a clinical finding by treating sources that despite the negative findings from EEGs, she does in fact have a seizure disorder. She argues that because there was no

4

evidence contradicting the clinical finding that she suffers from a seizure disorder, the ALJ should have obtained expert testimony to explain the significance of prescribing Dilantin despite normal findings from EEGs.

Finally, Munoz complains that the ALJ stated that she "is simply not a person who is motivated to work," (*see* Tr. 230), and argues that the ALJ's comment constitutes inappropriate speculation and shows a pre-disposition to deny her claim regardless of the evidence in the record or the District Court's remand order. She argues that the lack of earnings posted to a claimant's earnings record or a sporadic work history or receipt of welfare payments has no connection with testimony concerning the frequency and severity of subjective symptoms and that such facts are not a proper basis upon which to discredit the claimant's testimony or on which to deny the claimant's claim.

### III.   The ALJ did not violate jurisdictional doctrines

The law of the case doctrine is a discretionary practice under which courts presume that an "issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002); *see also Fuhrman v. Dretke*, 442 F.3d 893, 896-97 (5th Cir. 2006). The mandate rule, which is described as an application of the law of the case doctrine, "compels compliance on remand with the dictates of a superior court and forecloses re-litigation of issues expressly or impliedly decided by an appellate court." *Fuhrman*, 442 F.3d at 897. Courts have held that the law of the case doctrine and the mandate rule "apply to judicial review of administrative decisions, and 'require [ ] the

5

administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision . . . .'" *See Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998)).

The District Court made no findings of fact in its remand order and did not issue an express or implied mandate that would require the ALJ to find that Munoz suffered from a severe seizure disorder or to elicit vocational expert testimony. The District Court entered a judgment ordering that the action be "reversed and remanded to the Commissioner for the purpose of conducting further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g)." On remand, the ALJ complied with the court's order by conducting further proceedings.

Citing 20 C.F.R. § 404.977(b), Munoz also argues that the Commissioner has incorporated the mandate rule into the regulations and that the rule applies to remand orders issued by the Appeals Council. The regulation Munoz cites directs that the ALJ must take any action ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order. *Id.* In this case, the Appeals Council issued an order vacating the Commissioner's decision "for further proceedings consistent with the order of the court." (Tr. 236.) The Appeals Council's order directed that the ALJ would "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record[,] and issue a new decision." *Id.* The ALJ held a hearing at which a vocational expert testified and the ALJ issued a decision. (Tr. 229-33, 281-99.) The ALJ therefore complied with the Appeals Council's order.

Finally, the doctrines of *res judicata* and collateral estoppel do not apply to Munoz' case. Under the regulations and Fifth Circuit precedent, issue preclusion is inapplicable in cases in which the Appeals Council vacates and remands a decision to the ALJ. *See* 20 C.F.R. §§416.1477(b), 416.1483; *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989) (remand order did not bind the ALJ to the earlier decision; ALJ did not err in reviewing the record and making new findings as to the claimant's residual functional capacity).

### IV.  The Commissioner's motion to remand was not a judicial admission

The court must reject Munoz' argument that the Commissioner made a judicial admission in her motion for remand. A judicial admission is a formal concession made by a party or counsel in pleadings or stipulations that is binding and has the effect of withdrawing a fact from contention. *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). Munoz argues the Commissioner made a judicial admission because she conceded that Munoz had a severe seizure disorder with attendant environmental limitations which necessitated remand for vocational expert testimony.

The Commissioner's motion for remand did not include a statement that could be construed as a concession that Munoz suffered from a severe seizure disorder. "Only 'deliberate, clear, and unequivocal' statements can constitute conclusive judicial admissions." *In re Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) (quoting *Backar v. Western States Producing Co.*, 547 F.2d 876, 880 n.4 (5th Cir. 1977)). There is no mention in the Commissioner's motion to remand of the first ALJ's findings that Munoz suffered

7

from a seizure disorder or any mention of any of the first ALJ's findings. In the motion to remand, the Commissioner stated that the purpose of remand was to allow an ALJ "to obtain vocational expert testimony that responds to a hypothetical question that includes all the exertional and non-exertional limitations supported by the record." The foregoing statement is not a deliberate, clear, and unequivocal admission that Munoz suffered from a seizure disorder that caused non-exertional impairments.

V.  **The ALJ did not err in determining that Munoz did not have a medically determinable seizure disorder or non-exertional impairments caused by a seizure disorder**

The medical evidence presents a mixed record as to whether Munoz suffered from a seizure disorder. On February 5, 2002, Munoz reported to her primary care physician, Karen Agler, M.D., that she recently experienced an episode of fainting that had lasted a "few minutes at the most," that she had experienced eight or nine such episodes in the prior twenty-two years, and that the episodes usually occurred in the bathroom. (Tr. 116.) On October 17, 2002, Dr. Agler indicated that Munoz was taking Dilantin at bedtime. (Tr. 110.) On December 8, 2002, Munoz reported to H.S. Chuang, M.D., a neurologist, that she experienced recurrent "black out spells" and that the first such spell occurred when she was in third grade, the second occurred when she was in sixth grade, and the third occurred when she was twenty-two years old. (Tr. 150.) She reported that she had experienced similar episodes since then and that the last incident occurred when she was taking a shower a few months prior to her appointment with Dr. Chuang. (Tr. 151.) Dr. Chuang noted that Munoz had undergone two MRI scans of her brain that were normal and two EEG's that

were reported as normal. *Id.* He further noted that Munoz underwent an EEG in his office with results that were within normal limits and that he was "not convinced that Munoz suffered a cerebral seizure disorder" but that she was taking Dilantin 300 mg at bedtime. *Id.*

Approximately one and one-half years later on June 21, 2004, Dr. Agler referred Munoz to Jitendra Vasandani, M.D., for complaints of pain, and Dr. Vasandani noted that Munoz had a history of a seizure disorder, which was controlled with Dilantin. (Tr. 269-70.) Over one year later on July 14, 2005, Dr. Agler examined Munoz again. (Tr. 264.) There is no indication that Munoz complained of seizures or of fainting, and Dr. Agler noted that Munoz' "biggest complaints always center on fibromyalgia and the back pain" and that Munoz had "not had any seizures in a while." *Id.*

Based on the foregoing medical evidence, there is substantial evidence from which the ALJ could conclude that Munoz did not suffer from a medically determinable seizure disorder. Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). In addition and in the alternative, the medical evidence shows that Munoz' seizures or fainting episodes were controlled with Dilantin. (Tr. 264, 269.) Impairments that can be remedied or controlled with treatment are not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Fraga v. Bowen*, 810 F.2d 1296, 1305 n.11 (5th Cir. 1987); *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980); *Havens v. Weinberger*, 477 F.2d 138 (5th Cir. 1973).

Munoz' contention that the ALJ should have obtained expert medical testimony before

determining that she did not have a severe seizure disorder should be rejected. Munoz cites no authority for her claim. The regulations and prevailing case law direct that a consultative examination at government expense is not required unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).; 20 C.F.R. § 416.912(f). In this case, there is evidence in the record from which the ALJ could make his determination. As indicated above, the medical evidence shows that EEGs were normal and that the seizures or fainting Munoz complained of was controlled with medication. In addition, Munoz testified that she walked and rode a bicycle for exercise (Tr. 210), drove a car when she felt well (Tr. 218), grocery shopped and did household chores (Tr. 218-19), took care of her husband when he was sick (Tr. 285), and walked her children to school everyday (Tr. 218).

Finally, Munoz' argument that the ALJ indicated a pre-disposition to deny her claim because he stated that she was not motivated to work does not require remand. The ALJ made this statement in conjunction with his discussion of the first step of the five-step sequential disability analysis which requires a determination as to whether the claimant has engaged in substantial gainful activity. *See* Tr. 230; 20 C.F.R. § 416.920(a)(i). He did not discuss Munoz' work history in conjunction with his findings regarding her credibility. (Tr. 231-32.) To the extent Munoz is complaining of bias, her claim is foreclosed because the record reflects that she did not present the claim to the Appeals Council. (Tr. 224.) A claimant who complains of bias on the part of an ALJ must exhaust administrative

remedies by raising the issue of bias before the Appeals Council. *See Muse*, 925 F.2d at 790 (citing 20 C.F.R. § 416.1440) (court refused to review a claim of bias where claimant alleged bias was evident from statements made in ALJ's decision, but failed to raise issue with the Appeals Council).

## VI. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Munoz' appeal with prejudice.

## VII. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: April 12, 2007.

NANCY M. KOENIG
United States Magistrate Judge

11